# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | § CASE NUMBER 4:19-CR-0271-SDJ |
| | § |
| MELIK B. EBRAHIM (2) | § |

## MEMORANDUM OPINION & ORDER

After he was arrested in the Southern District of Texas, Defendant Melik B. Ebrahim appeared before Magistrate Judge Dena Palermo for a detention hearing. Magistrate Judge Palermo ordered Ebrahim released on a $100,000 secured bond and subject to several conditions of release, and then stayed her order pending appeal and resolution of the matter in the district court. The United States filed an appeal of the magistrate judge's order of release, requesting that this Court revoke the release order and detain Ebrahim pending trial. (Dkt. #41).

Because the factors set forth in 18 U.S.C. § 3142 weigh in favor of detaining Ebrahim pending the resolution of this case, the government's motion to revoke the magistrate court's release order will be GRANTED.

### I. BACKGROUND

Ebrahim, together with two co-defendants, is charged with conspiracy to possess with the intent to distribute and distribution of cathinone and cathine (khat) in violation of 21 U.S.C. § 846, as well as possession with the intent to distribute and

1

distribution of khat in violation of 21 U.S.C. § 841(a)(1). These charges are premised on Ebrahim's alleged role in an international khat-distribution network.

Following Ebrahim's arrest, Pretrial Services in the Southern District of Texas recommended that Ebrahim be released on a $50,000 appearance bond and under various conditions of release, including pretrial services supervision, travel restriction to the Southern and Eastern Districts of Texas, that he maintain or seek verifiable employment, that he surrender his passport, that he refrain from contact with co-defendants, and that he inform pretrial services of any contact with law enforcement. Pretrial Services' proposed conditions of release would additionally require that Ebrahim not use excessive alcohol, and that he not possess or use firearms, other weapons, or non-prescription narcotic drugs. Magistrate Judge Palermo followed that recommendation in part, ordering release subject to a $100,000 secured bond and additionally requiring GPS monitoring and prohibiting alcohol use.

The government appealed the magistrate court's release order and this Court held a pretrial detention hearing. The government presented the testimony of DEA Task Force Officer Norm Abrams, who discussed the evidence collected by law enforcement showing that Ebrahim is a large-scale khat distributor, as well as related matters concerning whether Ebrahim presents a flight risk and his potential danger to the community if released.

On the morning of the hearing, Ebrahim filed a motion asking the Court to compel the government to turn over all Jencks Act and Federal Rule of Criminal

Procedure 26.2 material, specifically DEA 6 reports,[1] in advance of the hearing. (Dkt. #58). Because the government had already provided Ebrahim with the requested DEA 6 reports and was ordered to produce witness statements established under Rule 26.2 during the hearing, the Court denied Ebrahim's motion as moot. (Dkt. #65). After the hearing, Ebrahim filed a supplemental brief addressing the sentencing range and likely sentence for the charged offenses, to which the government did not respond. (Dkt. #69).

## II. APPEAL OF THE RELEASE ORDER

Under 18 U.S.C. § 3145(a)(1), when a defendant is ordered released by a magistrate judge, the government may file a motion for revocation of the release order with the district court. The district court reviews a motion to revoke a detention order de novo and "must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585–86 (5th Cir. 1992) (citing *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985)).

### A. The Law Governing the Release and Detention of Defendants Awaiting Trial

The Bail Reform Act, 18 U.S.C. § 3142, governs the release and detention of defendants awaiting trial. A judicial officer may order a defendant detained pending trial upon a finding that the government has shown by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of the person," or by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person

---

[1] A "DEA 6" is a United States Drug Enforcement Administration Report of Investigation.

3

and the community." 18 U.S.C. § 3142(e); *see also Rueben*, 974 F.2d at 586 (explaining that, "[f]or pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required").

Section 3142(g) provides that a court shall consider the following factors in determining whether a person poses a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3141(g); *see also United States v. Acosta-Leyva*, 751 F. App'x 594, 595 (5th Cir. 2019) (per curiam) (unpublished).

In some cases, a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure [1] the appearance of the person as required and [2] the safety of any other person and the community." 18 U.S.C. § 3142(e). The rebuttable presumption arises upon a finding of probable cause to believe that the defendant committed an offense subject to a maximum term of imprisonment of ten years or more under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*; 18 U.S.C. § 3142(e)(3)(A); *see also Rueben*, 974 F.2d at 586 (citing 18 U.S.C. § 3142(e)). Probable cause exists when offenses under the Controlled

Substances Act are charged in an indictment. *See, e.g.*, *United States v. Trosper*, 809 F.2d 1107, 1110 (5th Cir. 1987) ("[T]his court stated that the presumption against pretrial release arises when drug crimes are charged in the indictment. It is therefore clear that the presumption was properly applied to [the defendant] upon proof that he had been indicted under the Controlled Substances Act." (citations omitted)).

Section 3142(e)'s rebuttable presumption shifts to the defendant "only the burden of producing rebutting evidence, not the burden of persuasion," which remains with the government. *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). If the defendant presents "evidence tending to rebut the presumption," the presumption "nevertheless remains in the case and is a factor to be considered." *Fortna*, 769 F.2d at 251; *see also Hare*, 873 F.2d at 798–99 ("[T]he court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society."). If the defendant does not present evidence sufficient to rebut the presumption, the court must still review the section 3142(g) factors. *See* 18 U.S.C. § 3142(g) (stating that the court "*shall* . . . take into account the available information" (emphasis added)); *see also United States v. Jackson*, 845 F.2d 1262, 1265 (5th Cir. 1988) (stating that section 3142(g) "*mandates* district court review of certain factors" (emphasis added)). As the Fifth Circuit has explained, the statute thus creates "an unusual set of weights and measures in which the burden of persuasion is on the government, not the defendant, but the presumption may be weighed in the evidentiary balance." *Hare*, 873 F.2d at 799.

***B. Because Ebrahim Is Both a Flight Risk and a Danger to the Community, He Must Be Detained Pending Trial.***

In its appeal of the magistrate judge's order of release, the government asserts that Ebrahim has not rebutted the presumption that he is a flight risk and a danger to the community, and that even if he did rebut the presumption, the section 3142(g) factors still weigh in favor of detention. To decide the motion, the Court must first determine whether Ebrahim is presumed to be a flight risk and a danger to the public and, if so, whether he has presented evidence sufficient to rebut those presumptions.

The Court has reviewed the record and the parties' filings, including all the materials considered by the magistrate court. In addition to written submissions, the government presented the testimony of Officer Abrams at the detention hearing. Ebrahim presented his brother, Abdurahaman Esmael. However, Ebrahim did not present Adnew Tadesse, who had previously testified on Ebrahim's behalf before the magistrate court in Houston, even though Tadesse was present for this Court's detention hearing.

*1. Section 3142(e)'s rebuttable presumption applies and has been rebutted by Ebrahim.*

The rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" applies in this case. Ebrahim has been indicted for alleged violations of 21 U.S.C. § 846 and § 841(a)(1). Under the Controlled Substances Act, Ebrahim faces up to 20 years of imprisonment, up to a $1,000,000 fine, and a mandatory minimum

of three years of supervised release for each charged offense.[2] *See* 21 U.S.C. § 841(b)(1)(C); *id.* § 846.

The indictment provides probable cause to believe that Ebrahim committed the charged offenses. *See Trosper*, 809 F.2d at 1110 ("[T]he presumption against pretrial release arises when drug crimes [under the Controlled Substances Act] are charged in the indictment."). Further, the testimony from Officer Abrams supports the finding of probable cause. *See Fortna*, 769 F.2d at 252–53 (finding probable cause, in part, using the affidavit of an investigating agent). Therefore, under 18 U.S.C. § 3142(e)(3)(A), the presumption applies, and Ebrahim was required to produce rebutting evidence.

To rebut the presumption, however, Ebrahim bears "only the burden of *producing* rebutting evidence, not the burden of persuasion." *Hare*, 873 F.2d at 798 (emphasis added). Ebrahim has produced evidence sufficient to rebut both the presumption that no combination of conditions will reasonably assure his appearance and that no combination of conditions will reasonably assure the public safety.

i. Appearance at trial and risk of flight

The evidence submitted shows that Ebrahim is a 60-year-old naturalized United States citizen of Ethiopian descent that has lived in Houston, Texas since

---

[2] The Defendant has argued both at the detention hearing and in supplemental briefing, (Dkt. #69), that the sentencing range for the indicted offenses is not ten years to life, as asserted by the government, but subject to a statutory range zero to twenty years under 21 U.S.C. § 841(b)(1)(C). The government did not respond to Ebrahim's supplemental briefing, but acknowledged in briefing on a co-defendant's motion that possession with the intent to distribute and distribution of khat and conspiracy to do the same are both subject to a sentencing range of zero to twenty years.

7

1982. Ebrahim's mother, two grown children, and three siblings currently live in the Houston area as well. Although divorced, Ebrahim continues to live with his ex-wife Ferida Saadi, and support her college-aged children. Ebrahim is retired from World Trade Distribution and now works as a driver for both his own limousine business and Uber. Although Ebrahim has family in Ethiopia and Australia, his last international trip was eight years ago, and his brother, Esmael, testified that Ebrahim does not speak to his family outside the United States.

Ebrahim's evidence is not persuasive regarding his fight risk, particularly given the evidence presented to the Court of Ebrahim's apparent access to air travel outside normal channels, international connections, and lack of meaningful family connections tying him to Houston. Officer Abrams testified that Adnew Tadesse, who appeared at the Houston detention hearing in support of Ebrahim and offered to serve as a surety, had sent text messages to Ebrahim while flying an airplane despite apparently having no license or certificate to do so. Further, although Tadesse testified before the magistrate court in Houston that he knew nothing about Ebrahim's involvement with khat distribution, text message evidence on Ebrahim's cellphone indicates that he sent Tadesse a photo of khat and, later, a message suggesting that they consume khat.

Although Ebrahim's brother, Esmael, testified that Ebrahim is not close to his family in Ethiopia or Australia, Ebrahim's ex-wife, Ferida Saadi, with whom Ebrahim resides, has family in Canada. Saadi also appears to have independent contact with Abdulhakim Mohamed, a higher-level co-defendant in this case.

8

Mohamed is accused of orchestrating the import and distribution of khat for the drug organization, and was arrested in possession of a bulk shipment of khat that later tested positive for cathinone. Officer Abrams testified that text message and photo evidence from Mohamed's cellphone not only indicates that Saadi had been present for what is assumed to be Ebrahim's initial meeting with Mohamed in early 2019, but that she also completed at least one shipment of khat for the drug organization at Mohamed's direction. Her alleged involvement dramatically diminishes the weight normally assigned to family ties to a specific location.

However, because Ebrahim only bears the burden of production, not of persuasion, he carried his burden of producing evidence sufficient to rebut the presumption as to risk of flight. *See, e.g.*, *United States v. Farguson*, 721 F. Supp. 128, 131 (N.D. Tex. 1989) (finding that defendants carried their burden of rebutting the presumption exclusively through evidence "obtained on cross-examination of the government agent"); *cf. Rueben*, 974 F.2d at 587 (determining that defendants failed to rebut the presumption that they were a danger because they presented "absolutely no evidence whatsoever" that they would cease their "continuous[] engage[ment] in the trafficking of drugs"). The presumption that no combination of conditions can reasonably assure Ebrahim's appearance at trial has been rebutted but remains as a factor to be considered in the Court's analysis. *See Fortna*, 769 F.2d at 251.

      ii. Danger to the public

The presumption that Ebrahim is a danger to the public has been similarly rebutted. Ebrahim has presented evidence that he has only a remote criminal history

9

stemming from two misdemeanor Driving While Intoxicated ("DWI") convictions. Multiple family members and friends appeared in his support at both hearings. Ebrahim also contends that his peaceful arrest and cooperation with law enforcement also militates against his danger to the public.

However, Ebrahim's rebuttal evidence is also unpersuasive, given the nature of Ebrahim's alleged crime and evidence suggesting that those closest to him are involved with the conspiracy. As mentioned above, all of Ebrahim's close family or social contacts presented or discussed in this case appear to be connected to khat trafficking and/or consumption. Evidence that Ebrahim's personal network appears to be steeped in drug activity or consumption suggests that he will remain a danger to the community, if released, by virtue of khat consumption, trafficking, or both. That a loaded weapon was found in Ebrahim's home, along with a kilogram of khat, further supports this notion.

Although Ebrahim's rebuttal evidence is ultimately unpersuasive, it is sufficient to rebut the presumption that Ebrahim is a danger to the public. *United States v. Hawkins*, 617 F.2d 59, 61 (5th Cir. 1980) (noting that danger to the community should be "concluded from all the surrounding circumstances"). The presumption, however, remains a factor to be considered in the Court's analysis of the public safety. *Fortna*, 769 F.2d at 251.

*2. Application of the section 3142(g) factors confirms that Ebrahim must be detained pending trial.*

Having determined that the presumption applies and that Ebrahim presented evidence sufficient to rebut the presumption as to both his appearance at trial and

whether he presents a danger to the public, the Court must now consider the section 3142(g) factors to answer the ultimate question of whether the government carried its burden of proof. The Court concludes that, having reviewed the section 3142(g) factors, the government proved by a preponderance of the evidence that no combination of release conditions could reasonably assure Ebrahim's appearance at trial and further proved by clear and convincing evidence that no such conditions could reasonably assure the safety of the public pending Ebrahim's trial.

i. Nature and circumstances of the offenses charged

Ebrahim has been charged with serious crimes. Khat is a Schedule I Controlled Substance under the Controlled Substances Act—a drug with no accepted medical use and a high potential for abuse. It is understood to function like an amphetamine, similar to bath salts, when ingested causing increased stamina, aggression, and possibly hallucinations.

If Ebrahim is convicted of the crimes charged against him, he faces a lengthy potential term of imprisonment—up to twenty years for each count charged. *See* 21 U.S.C. § 841(b)(1)(C); *id.* § 846. Although Ebrahim argues in his supplemental briefing that he may eventually be subject to a relatively light sentence under the U.S. Sentencing Guidelines if convicted, his argument is too speculative to bear much weight at the pretrial detention stage. *See United States v. Iglesias-Benitez*, No. 92-1837, 1992 WL 210612, at *2 (1st Cir. 1992) (per curiam) (unpublished) (noting that the "prediction of a lesser sentence may affect the weight assigned to the

presumption" but finding the defendant's analysis "too 'ethereal' to diminish the presumption's force" (emphasis omitted)).

Specifically, Ebrahim asserts that a defendant will only be accountable at sentencing for drug quantities which were directly attributable or reasonably foreseeable to him. (Dkt. #69 at 3). While Ebrahim correctly states the law, the facts before the Court at this stage are insufficient to make a determination about a likely sentence. Accordingly, the severity of Ebrahim's *potential* sentence remains somewhat in favor of detention. *See United States v. Neff*, Criminal Action No. 3:11-CR-0152-L, 2013 WL 30650, at *3 (N.D. Tex. Jan. 3, 2013) (finding that a cumulative twenty-five year maximum sentence weighs in favor of detention); *United States v. Stanford*, 630 F. Supp. 2d 751, 755 (S.D. Tex. 2009) (finding that a 375-month potential sentence "weighs heavily in favor of detention"); *United States v. Almasri*, Criminal Action No. H-07-155, 2007 WL 2964780, at *1 (S.D. Tex. Oct. 10, 2007) (finding that a maximum sentence of ten years combined with the possibility of multiple counts of conviction resulting in consecutive penalties weighs in favor of detention).

The circumstances of the offenses charged also weigh in favor of detention. Officer Abrams testified that federal law enforcement authorities have developed evidence that Ebrahim is part of a large-scale, international khat-trafficking organization. He explained that the organization in which Ebrahim allegedly operates dates back to at least 2015. Officer Abrams additionally testified that since

January of 2019 over 1000 kilograms of imported khat are attributable to the defendants currently indicted in this case.

Ebrahim himself is linked to shipments of khat into Houston. Officer Abrams testified that Mohamed, a co-defendant in this case, told law enforcement that he met with Ebrahim in Houston in early 2019. Geotagged photos on Mohamed's cellphone corroborate his statement. At Mohamed's direction, Ebrahim allegedly rented two storage units to store incoming shipments of khat before being repackaged and shipped out. Subpoenaed evidence from one of the storage units confirms that Ebrahim did have a storage unit at the location Mohamed described.

In addition to a shipment of over 300 kilograms known to have reached the public storage address, several shipments, identified by airway bills sent to Ebrahim from Mohamed and other co-conspirators, were seized by U.S. Customs and Border Protection ("Customs"). Officer Abrams testified that the practice of the drug organization that Ebrahim is allegedly affiliated with is to ship khat from its source location to another country in which the organization has been able to bribe officials to change the manifest associated with the shipment to reflect innocuous contents, such as some type of dried tea. After the manifest is changed, the drug organization is able to export it to the United States without detection. Subpoenaed evidence from companies receiving the manifest for the shipments tends to show that these Houston-bound shipments were each manifested from the same company and in the same manner as shipments of khat intercepted by Customs. Further, Officer Abrams testified to a photo on Ebrahim's cellphone showing a picture of khat packed and

13

labeled in the same way as a shipment of khat attributable to the drug organization intercepted in April of 2019 that tested positive for cathinone.

Once in possession of the khat, Officer Abrams testified that Ebrahim would then repackage and ship smaller shipments of khat to addresses as directed by Mohamed, who also deposited funds into Ebrahim's business account and to Ebrahim personally via Venmo. Ebrahim would confirm that he had made the shipments as directed by sending Mohamed photos of the shipping receipt and tracking number.

Finally, in addition to the khat that Ebrahim is suspected to have received, re-packaged, and shipped on behalf of Mohamed, Ebrahim was found in possession of 74 grams of khat in his vehicle, where he was on duty as a driver at the time of his arrest. A consensual search of Ebrahim's home following his arrest revealed an additional kilogram of khat and a loaded gun.

The nature and circumstances of Ebrahim's charged offenses therefore weighs in favor of detention.

### ii. Weight of the evidence

The Court must also consider the weight of the evidence against Ebrahim, although it has been found "to be of least importance in the detention determination." *Stanford*, 630 F. Supp. 2d at 755 (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986)); *United States v. Barnett*, 986 F. Supp. 385, 393 (W.D. La. 1997).

The government presented the testimony of Officer Abrams in support of their case against Ebrahim. His testimony discussed various text messages between Ebrahim and others involved in the drug trafficking organization, airway bills, and

manifests that link Ebrahim to the shipment pattern of the drug trafficking organization with which he is allegedly affiliated and corroborate details from Mohamed's interview. The text messages between Ebrahim and Mohamed demonstrate that the two were in close contact, with Mohamed directing Ebrahim's activities with respect to the shipments and Ebrahim responding with photo confirmation of shipping receipts and tracking numbers indicating that he had completed the shipments as directed. Importantly, searches of Ebrahim's car and home revealed possession of more than a kilogram of khat.

Evidence of Ebrahim's role in the drug organization and possession of khat, therefore, also weighs in favor of detention.

iii. History and characteristics of the Defendant

Ebrahim's history and characteristics also indicate that he is a flight risk and danger to the community. Although Ebrahim attempts to portray himself as a retiree that is only trying to live a quiet life supporting himself and his family, the evidence submitted belies this characterization. Moreover, evidence and witnesses intended to support his assertion, in fact, diminish his credibility.

Ebrahim is now an American citizen, having immigrated from Ethiopia in 1978. However, he still has family residing in Ethiopia, a non-extraditable country, as well as Australia. Ebrahim's ex-wife, Saadi, described as his "common-law" wife and with whom he lives, has also been implicated in the conspiracy and has family in Canada. While Ebrahim has many family members in the Houston area, at least two close family members, his brother, Esmael, and Saadi, appear to have independent

15

contact with Mohamed—a higher-level member of the drug trafficking organization who is alleged have orchestrated the international importation and distribution of khat in this case—as demonstrated by cellphone evidence of phone calls and text messages with each, respectively. Those conversations indicate that Saadi made at least one shipment of khat to Canada at Mohamed's direction. Saadi appears to have additionally been present at what is assumed to the be initial meeting between Ebrahim and Mohamed in early 2019.

Saadi and Esmael's apparent involvement with khat and/or khat trafficking suggests that the drug permeates Ebrahim's familial and social networks, and that Ebrahim's involvement with khat is likely to continue if he is released. Saadi's involvement, in particular, also diminishes the weight of Ebrahim's family connections to Houston that might otherwise militate against a risk of flight. Further, despite a long history in Houston, Ebrahim does not own a home there and has few assets tying him to the area.

Ebrahim's history concerning substance abuse also suggests that detention is appropriate. Although his criminal history is remote, Ebrahim has been twice convicted for DWI in the span of one year. He has now been arrested in possession of 74 grams of khat, an amphetamine-like substance, in his car and over 1 kilogram in his home. The government argues that this demonstrates a disregard for court orders, but it also may demonstrate likelihood of continued substance abuse if Ebrahim is released pretrial, especially in light of his inner circle's apparent involvement with khat distribution and consumption. It cannot be overlooked that even if Ebrahim

discontinues his alleged trafficking activities while awaiting trial, he may abuse khat. As Ebrahim is a driver for his own limo service and Uber, a line of work he intends to return to if released, the prospect of drug abuse represents another form of danger to the public.

Finally, the evidence put on by Officer Abrams indicates that both individuals that Ebrahim has selected to serve as sureties, Abdurahaman Esmael, Ebrahim's brother, and Adnew Tadesse, a close friend, are problematic. Their selection further suggests that connections to khat and/or khat trafficking pervade Ebrahim's familial and social network. First, Officer Abrams testified to contact between Mohamed, a higher-level co-defendant in this case, and Ebrahim's brother, Esmael. Specifically, Officer Abrams testified that authorities found contact information for Esmael on Mohamed's cellphone. Officer Abrams further testified that evidence collected from Ebrahim's cellphone indicated that he had also texted Mohamed's contact information to Esmael. Officer Abrams then testified to at least three two- to three-minute phone calls between Mohamed and Esmael, despite Esmael's testimony that he does not know Mohamed and had never heard of him prior to the detention hearing in Houston. The conflict in testimony not only undermines Esmael's credibility with respect to his duties as surety, but, in light of Mohamed's alleged leadership role in the drug organization, also raises questions about Esmael's potential involvement with khat trafficking himself.

Second, Officer Abrams's testimony suggests that Tadesse, who appeared on Ebrahim's behalf at the hearing in the Houston magistrate court, has access to an

17

airplane which he is able to fly without any sort of license or certificate. Officer Abrams testified that he located text messages between Tadesse and Ebrahim in which Tadesse stated that he was flying a plane and about to land it. Officer Abrams further testified that he was unable to locate any sort of license or certificate in Tadesse's name that would allow him to fly an airplane. Although Tadesse was present for the Plano hearing, the defense neither called him nor attempted to refute this testimony. Officer Abrams also testified that he located text messages between Tadesse and Ebrahim that included a photo of khat and a message suggesting that they consume khat, despite Tadesse's previous testimony that he was unaware of Ebrahim's alleged involvement with khat distribution. The potential involvement and international contacts of Ebrahim's inner circle of friends and family negate the grounding force that close ties to the community would normally represent.

All of this evidence, taken together with the testimony showing Ebrahim's role in the drug organization and the charged offenses, weighs in favor of detention. *See Volksen*, 766 F.2d at 193 (upholding a district court's order of detention based on the presumption of flight risk and the government's evidence of the defendant's interest in fleeing the country to avoid prosecution).

### iv. Nature and seriousness of the danger posed by the Defendant

Although the presumption that Ebrahim will be a danger to the community has been rebutted, "the [C]ourt may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society." *Hare*, 873 F.2d at 798–99; *see also Rueben*, 974 F.2d at 586 ("[T]he risk of continued narcotics

18

trafficking on bail does constitute a risk to the community . . . ."). It is also concerning that both sureties identified by Ebrahim, tasked with ensuring court appearances and compliance with conditions of release, as well as Ebrahim's live-in ex-wife, have connections with khat and/or khat trafficking. That concern is intensified in light of the fact that both Esmael and Tadesse affirmatively testified to having no knowledge of Ebrahim's involvement with khat during his detention hearings—testimony that appears to have been untruthful. Further, evidence put on by the government and uncontroverted by the defense indicates that Ebrahim has access to unregistered air travel.

In sum, the Court concludes that all the section 3142(g) factors weigh in favor of revoking the magistrate court's release order. Put simply, there are no conditions of release that will reasonably assure Ebrahim's appearance for further proceedings and the safety of the community.

### III. Conclusion

It is therefore **ORDERED** that the government's appeal, and its request that the magistrate court's order of release be revoked, (Dkt. #41), is hereby **GRANTED**. The release order issued by the United States Magistrate Judge in the Southern District of Texas is **REVOKED** and **SET ASIDE**. Defendant Ebrahim shall remain in custody pending trial.

**So ORDERED and SIGNED this 12th day of March, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE